SIGMON COAL COMPANY, INC. and
Jericol Mining, Inc., Plaintiffs,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.

No. Civ.A. 96–0148–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 18, 1998.

John R. Woodrum, W. Gregory Mott, Washington, DC, H. Ronnie Montgomery, Jonesville, VA, for plaintiff.

Stephen U. Baer, Asst.U.S.Atty., Roanoke, VA, Alonzo H. Long, Asst.U.S.Atty., Roanoke, VA, UMWA Amicus: Jonathan Sokolow/David W. Allen/Larry D. Newsome, UMWA, Washington, DC, John E. Kieffer, Bristol, VA, for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

### I. Introduction

Plaintiffs filed this action June 25, 1996, alleging that Defendant Kenneth S. Apfel, Commissioner of Social Security (hereinafter, "Commissioner"),[1] in the course of assigning beneficiaries in the United Mine Workers of America Combined Benefit Fund (hereinafter, "Benefit Fund") to responsible operators under the Coal Industry Retiree Health Benefit Act of 1992 (hereinafter, "Coal Act"),[2] wrongfully assigned beneficiaries to Plaintiff Jericol Mining, Inc. (hereinafter, "Jericol").[3] Discovery was had and Plaintiffs moved for summary judgment. Defendant opposed Plaintiffs' Motion for Summary Judgment and submitted its own Motion for Summary Judgment. The Trustees of the Benefit Fund filed a brief as *amicus curiae,* also opposing the Plaintiff's Motion for Summary Judgment.

Action on the case was stayed pending the United States Supreme Court's decision in *Eastern Enters. v. Apfel,* 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Thereafter, Plaintiffs filed a supplemental complaint alleging that the statute used to assign beneficiaries to responsible operators[4] was unconstitutional as applied to them. An October 22, 1998 telephone conversation between the parties, *amicus curiae* and the court confirmed that no additional filings would be made as to the matter of statutory interpretation and that the Motions were ripe for decision as to the statutory interpretation issue. The court exercises jurisdiction in this case under 28 U.S.C. § 1331, because the case arises under a federal statute. Venue is proper under 28 U.S.C. § 1391(e). Thus, the court will now decide both parties' Motions for summary judgment.

### II. Background of the Coal Act

The Coal Act was intended to stabilize health benefits for United Mine Workers Association (hereinafter, "UMWA") retirees.[5] The Act contains a statutory scheme for determining which "signatory operator" from the coal business[6], must pay annual premiums for each beneficiary in the Benefit Fund. The assignment statute, found at 26 U.S.C. § 9706(a), also provides that a "related person" to a signatory operator may be held accountable for premiums in cases where the signatory operator is no longer in business,[7] but the related person continues in business. The Commissioner of Social Security was directed to administer this statutory scheme.[8]

Application of the statutory scheme in 26 U.S.C. § 9706(a) proceeds through three levels of priority, as found in the statute below:

---

1. Shirley S. Chater, then-Commissioner of Social Security, was named as Defendant when this case was filed. John J. Callahan was substituted as Defendant upon his appointment as Acting Commissioner of Social Security on March 1, 1997, pursuant to 42 U.S.C. § 405(g). Kenneth S. Apfel, current Commissioner of Social Security, was sworn into office on September 29, 1997, and thereafter was substituted as Defendant in this action, also pursuant to 42 U.S.C. § 405(g).

2. 26 U.S.C. § 9701, *et seq.*

3. Sigmon Coal Company, Inc. joins Jericol as a plaintiff in this action apparently because they are related persons under the Coal Act, *see* 26 U.S.C. § 9701(c)(2), and thus jointly and several-

ly responsible for any amounts due from either of them. 26 U.S.C. § 9704(a).

4. 26 U.S.C. § 9706(a).

5. —— U.S. at ——-——, 118 S.Ct. at 2141–42.

6. 26 U.S.C. § 9701(c)(1).

7. "Business" is defined broadly in the Coal Act to include "conduct[ing] or deriv[ing] revenue from any business activity, whether or not in the coal industry." 26 U.S.C. § 9701(c)(7).

8. Originally, the Secretary of Health and Human Services bore responsibility for administering the statute (Plaintiff's Memo. at 3).

For purposes of this chapter, the Commissioner of Social Security 'shall, before October 1, 1993, assign each coal industry retiree who is an eligible beneficiary to a signatory operator which (or any related person with respect to which) remains in business in the following order: (1) First, to the signatory operator which—(A) was a signatory to the 1978 coal wage agreement or any subsequent coal wage agreement, and (B) was the most recent signatory operator to employ the coal industry retiree in the coal industry for at least 2 years. (2) Second, if the retiree is not assigned under paragraph (1), to the signatory operator which—(A) was a signatory to the 1978 coal wage agreement or any subsequent coal wage agreement, and (B) was the most recent signatory operator to employ the coal industry retiree in the coal industry. (3) Third, if the retiree is not assigned under paragraph (1) or (2), to the signatory operator which employed the coal industry retiree in the coal industry for a longer period of time than any other signatory operator prior to the effective date of the 1978 coal wage agreement.

After this process is completed, a beneficiary may remain unassigned.[9] In such a case, transfer payments from the Abandoned Mine Reclamation Fund (hereinafter, "AML Fund") will be made to the Benefit Fund to pay the premiums of such beneficiaries.[10] If AML Fund transfer payments are insufficient to pay those premiums, assigned operators will pay the difference on a pro rata basis.[11]

### III. Facts

Plaintiff Jericol was originally formed in 1973 as Irdell Mining, Inc. (hereinafter, "Irdell"), by James and Charles Sigmon and Fred Langley (James Sigmon Affidavit at 1). Shortly after the formation of Irdell, it and The Dale Company purchased most of the operating assets, coal inventory, supplies, leases and contracts of Shackleford Coal Company, Inc. (hereinafter, "Shackleford One"). The contract for sale references several Exhibits listing the precise assets, leases, contracts and commitments transferred. These Exhibits have not been made part of the record. Although there was common ownership between Dale and Irdell, no owner of either Dale or Irdell was an owner of Shackleford One. Irdell changed its name, operating as Shackleford Coal Company (hereinafter, "Shackleford Two") until 1977, when it again changed its name to Jericol (James Sigmon Affidavit at 2). While Shackleford One was a signatory to a coal wage agreement while it was in business, Shackleford Two was only signatory to the 1974 wage agreement.

In late 1993, Defendant notified Plaintiff Jericol that Plaintiff had been assigned responsibility for the premiums of 10 UMWA retirees and 10 of their dependents. Ten miners or dependents were assigned on the basis that Jericol was a related person to Shackleford One, a signatory operator. This assignment was based on 26 U.S.C. § 9706(a)(3).[12] Jericol challenged this decision, which was affirmed as the Commissioner found that Jericol was the "successor in interest" of Shackleford One. Shackleford One was the entity those miners had actually worked for and would have been the assigned signatory operator had it continued in business. In 1995, 49 additional retirees and 60 of their dependents were assigned to Jericol. Of these miners, 44 were assigned on the basis of their employment with Shackleford One. Jericol challenged the assignments which were based upon the Commissioner's position that Jericol was a successor in interest to Shackleford One, and thus a related person responsible for premium payments.

The following year, after this action was filed, 38 additional miners, plus dependents, were assigned to Jericol, 34 of them based upon employment with Shackleford One. Again, Jericol appealed the Commissioner's decision as it pertained to miners for whom liability for premiums was based upon

---

9. See 26 U.S.C. § 9704(d).

10. 26 U.S.C. § 9705(b).

11. 26 U.S.C. § 9704(a)(3) and (d).

12. This information is gleaned from the letters and attachments sent from the Social Security Administration to Jericol as part of the administrative process.

the Defendant's classification of Jericol as a related person to Shackleford One. No final determination was issued by the Commissioner as to the 1995 and 1996 challenges by Jericol. In 1997, eight additional miners and dependents were assigned to Jericol, with three miners being assigned on the basis of their prior work for Shackleford One. Jericol planned to appeal those assignments, but contended that it should not be required to exhaust its administrative remedies before seeking relief from this court because of the similarity of the law and facts underlying each assignment of Shackleford One's miners to Jericol. After consideration, this court agrees.[13]

In all, more than 100 retired miners plus their numerous dependents were assigned to Jericol as part of Defendant's assignment process. Of these assignments, more than 80 miners were assigned because Jericol was viewed as a successor in interest to Shackleford One. Dependents of the 80 miners thus assigned were also assigned to Jericol on the same basis. It should be clarified that Jericol does not herein appeal all assignments to it. Rather, this case only involves challenges to assignments made on the basis that it is responsible for premium payments on behalf of Shackleford One's miners.

## IV. Legal Discussion

### (A) Summary Judgment Standard

A party moving for summary judgment will have its motion granted if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. In considering a grant of summary judgment, the court may consider the pleadings, depositions, answers to inter-rogatories, and admissions on file, as well as any affidavits filed with the court. FED. R.CIV.P. 56(c). The court must view the evidence under consideration in the light most favorable to the non-moving party.[14]

### (B) Standard of Review of Agency Action

A finding of an agency, such as the one represented by Defendant, may be set aside by this court only if the finding is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), is the landmark case on review of agency decisions. It established a two-prong test for determining the proper amount of deference to be given.

Under the *Chevron* test, the court must first decide "whether Congress has directly spoken to the precise question at issue."[15] If the statute is plain on its face, the court must give effect to the expressed intent of Congress, without consideration of the agency's decision.[16] In addition to "the particular statutory language at issue," the court must consider "the language and design of the statute as a whole."[17] However, if Congress has left a gap in the statute to be filled by the agency, the court must then determine whether the agency's decision is "based on a permissible construction of the statute."[18] If it is so based, then considerable deference must be given to the agency's interpretation of the regulations it promulgates to fill that gap.[19]

### (C) Legal Analysis

The matter of whether Congress has spoken clearly in enacting the Coal Act has

---

13. *See Sager Coal Co. v. Apfel,* No. 96–1107, slip op. at 11–12 n. 5 (W.D.Penn. Jan. 12, 1998) (noting the futility of further administrative challenges where, as here, the Commissioner is making repeated Coal Act assignments based upon similar facts and law).

14. *Cuddy v. Wal–Mart Super Ctr., Inc.,* 993 F.Supp. 962, 965 (W.D.Va.1998) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

15. *Chevron,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694.

16. *Elliott v. Adm'r, Animal and Plant Health Inspection Serv.,* 990 F.2d 140, 144 (4th Cir.1993).

17. *Soc. Sec. Adm'n v. Fed. Labor Relations Auth.,* 956 F.2d 1280, 1283–84 (4th Cir.1992) (citing *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988)).

18. *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778.

19. 467 U.S. at 843–44, 104 S.Ct. 2778.

been addressed by two other district courts earlier this year, with both finding the language of the Act to be plain.[20] At least one circuit court has also held that the language of the Act is plain.[21] In particular, one of the district courts has so held with respect to 26 U.S.C. § 9701(c)(2)(A).[22] This section is the statutory law governing the issue at hand, namely whether a successor to a defunct signatory operator can be held accountable as a "related person" to that signatory operator.[23] This court agrees with the rationale and findings of the above-cited courts, and concludes that Congress has plainly and clearly expressed itself in the statutory language at issue. Therefore, for the reasons stated below, the court must give effect to the expressed Congressional intent, as set out in the statutory language, rather than deferring to the Commissioner's decision.

 The classification regime of 26 U.S.C. § 9706(a) does not provide, directly or indirectly via the definition of related persons at 26 U.S.C. § 9701(c)(2), for liability to be laid at the door of successors of defunct signatory operators. Defendant and *amicus curiae* contend otherwise, with the former arguing both that the language is broad enough and contains gaps for its regulations to fill (Defendant's Memo. at 15), and that "the record shows that Jericol meets the statutory criteria for a successor company" (Id. at 13). However, there is no such entity as a "successor company" anywhere in the Coal Act. *Amicus curiae* states that a " 'successor in interest' is a related person" (Amicus Memo. at 11), neglecting the last line and a half of the final sentence of 26 U.S.C. § 9701(c)(2). The language urged by Defendant and *amicus curiae* simply was not included by Con-

gress when it enacted this statute. The court is also aided by the rule of statutory construction that when " 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' This principle obtains here ... [as] at two other points the Coal Act makes explicit reference to successors." [24]

Defendant has imposed liability on the basis of Plaintiff Jericol's supposed status as a related person. "Related persons" are defined in 26 U.S.C. § 9701(c)(2). There are four types of related persons under that statute, the first three set out in individual clauses and the last one encompassing "a successor in interest of any person described in clause (i), (ii), or (iii) of 26 U.S.C. § 9701(c)(2)(A)." The text of 26 U.S.C. § 9701(c)(2)(A) reads:

> A person shall be considered to be a related person to a signatory operator if that person is—(i) a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator; (ii) a trade or business which is under common control (as under section 52(b)) with such signatory operator; or (iii) any other person who is identified as having a partnership interest or joint venture with a signatory operator in a business within the coal industry, but only if such business employed eligible beneficiaries, except that this clause shall not apply to a person whose only interest as a limited partner. A related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii).

**20.** *See R.G. Johnson,* 994 F.Supp. 10, 14 (holding that 26 U.S.C. § 9701(c)(2)(A) has a plain meaning) and *Sager Coal Co. v. Apfel,* No. 96–1107, slip op. at 19 (W.D.Penn. Jan. 12, 1998) ("Section 9706(a) of the Coal Act is unambiguous").

**21.** *Eastern Enters. v. Chater,* 110 F.3d 150, 155 (1st Cir.1997) ("[T]he first step of the Chevron pavane is fully dispositive. Section 9706(a) of the Coal Act unambiguously delineates a classification regime."), *rev'd sub nom. on other grounds, Eastern Enters. v. Apfel,* —— U.S. ——, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

**22.** *R.G. Johnson,* 994 F.Supp. 10.

**23.** This issue is distinct from that addressed by 26 U.S.C. § 9706(b)(2), which provides for liability to be transferred to a successor where liability has already been assigned to a signatory operator, when such succession occurs after the enactment date of the Coal Act. *See R.G. Johnson Co., Inc. v. Apfel,* 994 F.Supp. 10, 14 (D.D.C.1998).

**24.** 110 F.3d 150, 155 (citing *Brown v. Gardner,* 513 U.S. 115, 120, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994)), *rev'd on other grounds,* —— U.S. ——, 118 S.Ct. 2131, 141 L.Ed.2d 451.

The court finds that Congress has drafted this section in language which is very plain and clear. If an entity meets the criteria for any of these clauses, liability may attach. Additionally, a successor to persons described in the clauses may be liable.

As in *R.G. Johnson*, Defendant here does not claim that Jericol meets any of the requirements of clauses (i), (ii), or (iii). Neither does it contend that Shackleford One met any of those requirements (Defendant's Memo. at 15), other than the contention that a signatory operator is described in those clauses.[25] Defendant does contend that the language of the final sentence of 26 U.S.C. § 9701(c)(2) is broad enough to allow use of its successor policy regulations which treat Jericol as a related person. The court disagrees, because the plain, straight-forward statutory language contains no gap left open for filling by the Defendant's regulations and policies. It clearly states that "a related person shall also include a successor in interest of any person described in clause (i), (ii), or (iii)."

A "successor in interest" is undefined by the Coal Act. Despite the comprehensive briefs and arguments of the parties and *amicus curiae* on this issue, it is not necessary for the court to determine what the term means. Assuming, without deciding, that the Commissioner has the authority to interpret the term and has reasonably done so to classify Jericol as a successor in interest (Defendant's Memo. at 5), Jericol plainly did not succeed to the interest of "any person described in clause (i), (ii), or (iii)" of 26 U.S.C. § 9701(c)(2)(A).

The court finds that a signatory operator is not described by any of those three clauses. The words "signatory operator" are used in the clauses, but so are the words "limited partner." A full reading of the statute makes it clear that limited partners are in fact not to be considered related persons. There is definitely a distinction between "describing" a person and merely mentioning or naming them, and signatory operators are merely named and mentioned in the clauses. In fact, Congress demonstrated this distinction when it described signatory operators by defining them in 26 U.S.C. § 9701(c)(1).

Only through the use of its regulations is Defendant able to justify the assignments challenged by Plaintiffs. Defendant's position thus "depends upon the addition of words to a statutory provision which is complete as it stands,"[26] as several other courts have noted.[27] "Adoption of [the Defendant's view] would require amendment rather than construction of the statute, and it must be rejected here,"[28] where the plain language of the statute clearly reflects Congressional intent. There is simply no room for Defendant's successor policy regulations in this statute, because Congress has left no gaps to be filled by Defendant. Defendant's sole responsibility under this statute is to administer a very plain and simple assignment scheme, not to make regulations which correct perceived inequities.

As the court has concluded above that Congress had a clearly expressed intent in enacting the Coal Act, this court is duty-bound to give effect to that intent. Although Defendant and *amicus curiae* may feel that the policy underlying the Coal Act is unsound,[29] the law is as Congress has written it

**25.** Defendant's Memo. at 21 (stating that "... the express language of the statute 'reaches forward' to impose joint and several liability on 'related persons' of responsible operators, *specifically including* the operators' successors...." [emphasis in original] ) and Amicus Memo. at 16.

**26.** 481 U.S. 454, 463, 107 S.Ct. 1855, 95 L.Ed.2d 404.

**27.** *Eastern Enters.*, 110 F.3d 150, 155, *rev'd on other grounds*, —— U.S. ——, 118 S.Ct. 2131, 141 L.Ed.2d 451 (noting the "unambiguously delineate[d] ... classification regime" of the Coal Act's assignment provisions); *R.G. Johnson*, 994

F.Supp. 10, 15–16; *Sager Coal*, No. 96–1107, slip op. at 21.

**28.** 481 U.S. 454, 463, 107 S.Ct. 1855, 95 L.Ed.2d 404.

**29.** Amicus Memo. at 15–16 (alleging a "completely absurd result" is reached under the position advocated by Plaintiffs and accepted by this court, and terming the statutory requirement of a controlled group of corporations in § 9701(c)(2)(A)(i) a "wholly irrelevant factor") and Defendant's Memo. at 28 (claiming that a "literal application of the language of the Coal Act" will produce an absurd result and "could result in unreasonable situations").

and it is not the duty of this court to change the words of Congress.

## V. Conclusion

For the foregoing reasons, the court concludes that the statutory language clearly reflects Congressional intent in enacting the Coal Act and thus the application of any gap-filling rules by Defendant is foreclosed. Thus, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Motion for Summary Judgment is DENIED.

## ORDER

For the reasons stated in the memorandum opinion entered this day, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED and Defendants' Motion for Summary Judgment is DENIED. It is further ORDERED that Defendant withdraw the assignments challenged by Plaintiff Jericol in this case, and notify the Trustees of the United Mine Workers of America Combined Benefit Fund that such assignments have been withdrawn. Furthermore, Defendant shall be enjoined from assigning additional retirees of Shackleford Coal Company, Inc. (referred to as "Shackleford One" in the court's opinion) to Plaintiff Jericol on the basis that Plaintiff is a related person to Shackleford Coal Company, Inc. This case shall be stricken from the docket of this court.